## COMMISSIONER OF INTERNAL REVE-NUE v. GARLAND.

### No. 3851.

Circuit Court of Appeals, First Circuit.

June 4, 1943.

Before MAGRUDER, MAHONEY, and WOODBURY, JJ.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and Arthur Manella, Sp. Assts. to the Atty. Gen., and J. P. Wenchel, Chief Counsel, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner for review.

Percy W. Phillips, of Washington, D. C. (James S. Y. Ivins, of Washington, D. C., of counsel), for Charles P. Garland, Executor.

MAGRUDER, Circuit Judge.

In this case the amount of estate taxes on the estate of Edith P. Garland, deceased, is in issue. The Commissioner petitions for review of a decision of the Board of Tax Appeals determining that $553,193.45 is deductible from the gross estate under § 303(a) (2) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Acts, page 234.

Harry P. Garland died on April 10, 1935. Edith P. Garland was the executrix and sole beneficiary of his estate. Edith died on May 4, 1938, naming respondent as her executor.

Harry's gross estate was finally valued at $617,651.33 for federal estate tax purposes. On this estate, the federal estate tax liability was $63,742.93, the state inheritance and estate tax liability was $13,807.72, and deductions allowed (exclusive of exemption) amounted to $22,458.41.

To the extent of $35,551.18, debts, taxes and administration expenses of Harry's estate had been paid from income or capital gains of his estate prior to Edith's death.

At the date of Edith's death there remained unpaid liabilities in Harry's estate in the amount of $14,031.50.

Included in Edith's gross estate of $773,614.68 were real estate and securities which had been received intact from Harry's estate. This specific real and personal property was valued in Edith's estate at $604,651.84 and in the prior estate at $567,224.95.

Section 303(a) (2) of the Revenue Act of 1926, 44 Stat. 72, as amended by § 806 (a) of the Revenue Act of 1932, 47 Stat. 281, and by § 402 of the Revenue Act of 1934, 48 Stat. 753, provides that for the purpose of the estate tax the value of the net estate shall be determined by deducting from the value of the gross estate:

"(2) An amount equal to the value of any property (A) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, * * * where such property can be identified as having been received by the decedent * * * from such ‛prior decedent by * * * bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. This deduction shall be allowed only where * * * an estate tax imposed under this or any prior Act of Con-

gress, was finally determined and paid by or on behalf of * * * the estate of such prior decedent, * * * and only in the amount finally determined as the value of such property in determining the value of * * * the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate, and only if in determining the value of the net estate of the prior decedent no deduction was allowable under this paragraph in respect of the property or property given in exchange therefor. Where a deduction was allowed of any mortgage or other lien in determining * * * the estate tax of the prior decedent, which was paid in whole or in part prior to the decedent's death, then the deduction allowable under this paragraph shall be reduced by the amount so paid. * * * Where the property referred to in this paragraph consists of two or more items the aggregate value of such items shall be used for the purpose of computing the deduction."

It was contended by the Commissioner before the Board, and again before us, that in determining the present decedent's net estate the deduction allowable under § 303 (a) (2) on account of property previously taxed is limited to the value of the present decedent's interest in the estate of the prior decedent at the time of the latter's death, which is to be computed by deducting the debts and obligations of the prior decedent's estate from its gross value. The deduction for property previously taxed, computed in accordance with the Commissioner's formula, would amount to $517,-642.27, arrived at by subtracting from $617,651.33 (the value of the gross estate of the prior decedent) the aggregate of the sums of $63,742.93, $13,807.72 and $22,-458.41 above mentioned. On the other hand, respondent contends that the deduction is measured by the aggregate value at which the identified items of property went into the gross estate of the prior decedent, unless the aggregate value at which such identified property went into the gross estate of the present decedent was a lesser sum, in which case that would be the measure of the deduction. Respondent conceded before the Board, however, that the deduction should be reduced by $14,-031.50, representing liabilities of the prior decedent's estate unpaid on the date of the death of the present decedent. The Board accepted the taxpayer's view, and determined the amount of the deduction to be $553,193.45, arrived at by subtracting the sum of $14,031.50 from $567,224.95 (the value at which the identified property stood in the estate of the prior decedent). The difference between the Commissioner's figure of $517,642.27 and the Board's figure of $553,193.45 is $35,551.18, which is the amount by which obligations of Harry's estate were paid by the application of income or capital gains realized by that estate while it was in the course of administration.

We think that the Board followed the plain language of the statute. The purpose of § 303(a) (2) is to avoid a double estate tax within five years on the same specific items of property identifiable as having been received by the decedent by bequest, devise or inheritance from the estate of an earlier decedent. Here Edith P. Garland is shown to have received by devise and bequest certain specific real estate and securities from the estate of Harry P. Garland. These specific properties were included in Harry's gross estate at a value of $567,224.95, and Harry's executrix paid the federal estate tax due thereon. It is wholly immaterial whether the executrix paid the debts of the estate by liquidating other property included in Harry's gross estate or by applying the income and capital gains realized by that estate during the period it was under administration. What is important in either case is that the deaths were less than five years apart and that Harry's executrix, from available funds of the estate, had paid the estate tax on the specific items of property now identified as having been received by Edith by devise or bequest and constituting part of her gross estate. In such a situation, § 303(a) (2) provides, with qualifications not now relevant, that the present decedent's estate is entitled to a deduction in an amount equal to the value of the identified property as it stood in the gross estate of the prior decedent.

In effect what the Commissioner asks us to do is to go beyond the permissible limits of statutory interpretation and to write into § 303(a) (2) a further proviso that in no event may the allowable deduction exceed the interest of the present decedent in the estate of the prior decedent as of the date of the latter's death. Neither in the wording of the statute nor in its legislative history do we find any support for the Commissioner's assertion that the statute was never intended to place the second decedent

in a better position from an estate tax viewpoint than would have been the case had the obligations of the first estate been satisfied in full by liquidation of property included in the gross estate instead of being satisfied in whole or in part out of income earned by the estate during administration. Obviously, Edith's estate is better off by reason of the fact that Harry's estate after his death earned income which could be applied to satisfy the obligations of the estate. If there had been no such income, part of the real estate or securities would have had to be sold to satisfy the tax and other obligations of Harry's estate and thus would not have been found in Edith's estate as identifiable property derived by devise or bequest from the prior estate. Insofar as Edith's estate gains any advantage under the circumstances it is an advantage resulting from the unambiguous language of § 303(a) (2).

The Government's main reliance is upon Bahr v. Commissioner, 5 Cir., 119 F.2d 371, certiorari denied 314 U.S. 650, 62 S. Ct. 95, 86 L.Ed. 521. In that case Frank V. Bender died in March, 1934, leaving a will in which his brother, Eugene L. Bender, was named executor and sole beneficiary of his estate. Eugene died a few months later without having completed administration of Frank's estate. The Commissioner ruled that Eugene's estate was entitled to a deduction, under § 303(a) (2) for property previously taxed, only in the amount of the net estate of the prior decedent (Frank). Eugene's executor claimed that Frank's gross estate should have been taken as the basis for the deduction and claimed also that Eugene's estate was entitled to deductions for the amounts of the unpaid federal and state taxes on Frank's estate, on the ground that they had become debts of Eugene's estate. It is to be noted that at the date of Eugene's death there was not included in his gross estate any specific items of identifiable property derived from the estate of Frank, because the latter estate had not yet been administered. All that Eugene had at his death was a claim against Frank's estate, which could not be worth more than the net value of Frank's estate after the satisfaction of all debts, taxes and administration expenses. The Commissioner was really giving the taxpayer a break when he allowed any deduction at all under § 303(a) (2). Certainly, no greater deduction could have been allowed under any theory, as the court pointed out in its discussion of § 303(a) (2). The court said (119 F.2d at page 374):

"The language used is adapted to one or more particular pieces of property specifically given or inherited. It is not adapted to an unadministered estate as a whole. This is a strong reason for caution in applying it to an unadministered estate which is indebted. If applied, it should be on condition that the reality of the situation be regarded, that Eugene did not become devisee of all Frank's property and of his debts, but was by the will and by the law told to pay the debts first. The estate tax of Frank was returned and estimated as though that had been done. Eugene was enriched only by the net amount of Frank's estate. He ought not to have his estate tax diminished because he did not pay Frank's debts, thus acquiring a larger gross estate and larger deductions as for claims against his own estate."

The situation in the case at bar is wholly different from that presented in Bahr v. Commissioner. Here specific items of real estate and securities included in the gross estate of the present decedent are identified as having formed part of the gross estate of the prior decedent upon which the estate tax has been duly paid.

As we have stated above, respondent conceded that the deduction under § 303(a) (2) should be reduced by $14,031.50, representing liabilities of the prior decedent's estate unpaid on the date of the death of the present decedent. The Commissioner argues that this concession is inconsistent with the main contention made by the respondent and accepted by the Board below. We do not perceive the inconsistency. It may be that when the present decedent took over as her own the specific real estate and securities from the prior estate, with $14,031.50 of debts of the prior estate unprovided for, to that extent the property was not properly "received" by the present decedent within the meaning of § 303(a) (2). Be that as it may, we are not now required to pass upon the propriety of the concession.

Finally, the Commissioner contends that if the Board's decision is correct, then Edith, as executrix of Harry's estate, could have paid the obligations of Harry's estate out of her own personal funds to the extent that the income and capital gains realized by Harry's estate during administration were insufficient for this purpose,

and thus could have obtained the same tax advantage under § 303(a) (2) by bringing over into her own estate the whole of the real estate and securities from Harry's gross estate. Respondent's answer to this argument is that if Edith had paid the obligations of the prior estate out of her own personal funds, thereby keeping intact the specific real estate and securities in the gross estate of the prior decedent, she would, to the extent of her advances, have become a purchaser of such property and would not have received it by "bequest, devise, or inheritance" within the meaning of § 303(a) (2). Whatever the decision would be in the case supposed, on which we express no opinion, the present case is quite different. Here Edith paid the debts and obligations of Harry's estate out of property and funds coming to her as executrix of such estate and not out of her personal funds. There is no doubt that certain items of real estate and securities forming part of Harry's gross estate were identified as having been received by Edith from such prior decedent by devise or bequest, and were included in her gross estate at her death.

The decision of the Board of Tax Appeals is affirmed.