### McCARTHY v. DELANEY.

Civ. No. 6687.

District Court, D. Massachusetts.

March 8, 1948.

Milton J. Donovan of Springfield, Mass., and Edmund M. McCarthy, of New York City, for plaintiff.

William T. McCarthy, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Paul S. McMahon, Sp. Assts. to the Atty. Gen., for defendant.

WYZANSKI, District Judge.

The issue raised by this case is the proper deduction from the gross estate of Margaret E. Deely for property which she received by bequest from her sister, Agnes T. Deely, who died less than five years before, and whose estate had paid an estate tax. 26 U.S.C.A. Int.Rev.Code, § 812(c).

Agnes died September 8, 1936 leaving Margaret as executrix and sole legatee. The gross estate was finally appraised at $235,789.84. There were allowable deductions of $19,270.54, a federal estate tax of $21,011.82 and a Massachusetts Inheritance Tax of $17,974.95. During the administration of Agnes' estate between October 1, 1936 and September 30, 1937 the estate of Agnes earned an income of $11,199.00 (R. 7). I find that this income was used, so far as necessary, to pay the debts left by Agnes. Before Margaret died all of Agnes' debts were paid out of this income, the estate tax on Agnes' estate was paid, and all her remaining assets had been transferred to Margaret as sole legatee.

Margaret died on October 30, 1939 leaving a gross estate of $313,454.16 upon which a tax of $15,328.24 was paid, and upon which a deficiency tax of $806.43 was later paid, a total of $16,134.67. In that estate of Margaret there appeared property which passed to her under the will of Agnes. In the plaintiff's view, upon the so-called "option date for valuation" that property had a value of $145,051.52. However, in this proceeding plaintiff does not claim that he can assert a higher valuation than $127,-417.76 [Plaintiff's Br., p. 4, lines 4 and 5], because in 1941 he accepted the valuation of $127,417.76 placed upon those assets by an internal revenue agent; in 1941 he paid a tax upon that valuation; and the time for seeking a refund has elapsed. In the Collector's view, upon the option date for valuation, the value of the property acquired by Margaret from Agnes was less than $127,417.76—exactly how much less I can-

not tell because there are not in evidence the Collector's assessment and the calculations based thereon, although they are referred to in paragraph 4 of the complaint and admitted in paragraph I of the answer. The Collector's lower valuation was based on his view that there should be no deduction from the value of Agnes' estate on account of those debts of Agnes which during Margaret's life had been paid out of the income of the estate of Agnes.

Acting on his theory, the Collector determined that in the federal estate tax paid on account of Margaret's estate there was a deficiency of $4,861.66 plus interest.

Since the taxpayer is a legatee and transferee of Margaret, the Collector proceeded to assess that deficiency and interest against him. November 1, 1945, he paid the Collector $6,274.97, representing the assessed deficiency and interest.

January 8, 1946 the taxpayer filed claim for refund. March 7, 1946 the Collector rejected the claim. Thereupon taxpayer filed timely suit.

On the trial of the case plaintiff rested after showing virtually nothing more than Agnes' estate tax return, Margaret's estate tax return, the 1941 action of the internal revenue agent, the payment of all of Agnes' debts during Margaret's lifetime, and the income of $11,199 in Agnes' estate from October 1, 1936 through September 30, 1937. Defendant introduced no evidence.

■ I could decide this case on the ground that there has been a failure of proof by plaintiff who as Margaret's legatee and transferee has the burden of showing that Margaret was not liable for the tax. Phillips v. Commissioner, 283 U.S. 589, 598, lines 31–32, 51 S.Ct. 608, 75 L.Ed. 1289.

■ But I prefer to rest the case on another ground. In my opinion the Collector is correct in his view that since Margaret was the sole legatee of Agnes, the way to value the property which had belonged to Agnes and appeared in Margaret's estate is to deduct from the property received the amount of Agnes' debts which were paid in Margaret's lifetime out of the income of Agnes' estate.

The problem is not a new one and to me the irrefutable answers have been given by Judge Learned Hand in Central Hanover Bank & Trust Co. v. Commissioner, 2 Cir., 159 F.2d 167, certiorari denied 331 U.S. 836, 67 S.Ct. 1518, and Judge Sibley in Bahr v. Commissioner, 5 Cir., 119 F.2d 371, certiorari denied 314 U.S. 650, 62 S.Ct. 95, 86 L.Ed. 521, although I am aware that in the court directly above me a contrary result was reached in Commissioner v. Garland, 1 Cir., 136 F.2d 82, a case in which certiorari was not sought.

 Where A owing X money, leaves to B all his estate, B's right to the property is junior to X's right to reach the property. Regardless of whether A's debts to X are paid out of the sale of some of the assets in A's estate [But see Magruder J. in Commissioner v. Garland, 1 Cir., 136 F.2d 82, 84, col. 1, lines 3–7] or out of the income which A's estate earns after A's death [and which is therefore not a part of A's bequest to B], or out of B's pocket, the value of the bequest from A to B is the value of A's gross estate less the amount of A's debt to X. As L. Hand J. said in Central Hanover Bank & Trust Co. v. Commissioner, 2 Cir., 159 F.2d 167, 168, col. 2: "It is of no consequence whether the debts were liens in a formal sense * * * it is enough that if * * * [B] did not pay them, the creditors could follow them and sell them on execution."

In short, creditors of Agnes had the type of "other lien" to which 26 U.S.C.A. Int. Rev.Code, § 812(c) refers. Such a lien must be deducted from Agnes' gross estate in calculating its value.

The fact that the lien was satisfied out of income earned by Agnes' estate during its administration is irrelevant. Such income was not technically part of a bequest or devise from Agnes to Margaret. If A, owning an equity in Blackacre subject to a mortgage to X, devised his equity to B, and during administration of A's estate the rents on Blackacre were used to pay off the mortgage so that Blackacre was actually transferred free and clear to B, and B died, the result would be that in reporting B's estate for federal estate tax purposes B's executor would be entitled to deduct the value not of the fee but of the equity in Blackacre. The result is no different here where the creditors of the first decedent had not a mortgage but an inchoate floating charge.

It follows that in the case at bar the value of the property bequeathed by Agnes to Margaret as sole legatee was, as the Collector contends, the value of Agnes' gross estate less the amount of debts owing by Agnes to her creditors.

Judgment for defendant with costs.