## BLOEDORN v. UNITED STATES.
### No. 50317.

United States Court of Claims.

Nov. 3, 1953.

Edgar J. Goodrich, Washington, D. C., Guggenheimer, Untermyer, Goodrich &. Amram, Lipman Redman, and George S. Elmore, Washington, D. C., on the briefs, for plaintiff.

Elizabeth B. Davis, Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the briefs, for defendant.

MADDEN, Judge.

The plaintiff sues for the recovery of estate taxes which she paid, and says she should not have been required to pay, upon the estate of her mother, Rose L. Sutherland. Rose L. Sutherland's husband died in 1942, leaving her as his sole legatee and executrix. His estate amounted to $492,518.44. A federal estate tax of $121,679.97 was imposed upon his estate. Rose L. Sutherland paid that tax out of her own funds. She died in 1946, still owning all the property which she had interited from her husband, as well as other property. Her entire estate amounted to $1,038,582.78. The plaintiff is the executrix of that estate.

Section 812(c) of the Internal Revenue Code, 26 U.S.C.A., provides that in applying the estate tax there shall be deducted, *inter. alia,* from the value of the gross estate, "property previously taxed." Property previously taxed is property which the decedent has received by inheritance from a prior decedent who has died within five years, and which was subjected to an estate tax as a part of the estate of the prior decedent.

The plaintiff claimed that $492,518.44 of the estate of Rose L. Sutherland was "property previously taxed" and therefore deductible from her gross estate. The Bureau of Internal Revenue claimed that only $370,678.13, that is, the amount of the gross estate of Rose L. Sutherland's husband less the tax paid upon it, was "property previously taxed." The plaintiff paid the tax as asserted by the Bureau and filed a claim for refund which was rejected. She sues for the amount by which the tax was increased by the disallowance of the full deduction.

The plaintiff says that the instant situation complies exactly with the statute authorizing the deduction. All of the $492,518.44 formed a part of the gross estate of Rose L. Sutherland's husband who died within five years before the death of Rose L. Sutherland. It was all subjected to an estate tax, as a part of that estate. That tax was paid. The Government says that, in spite of this apparent compliance with the requirements of the statute, the full deduction is not permissible; that Congress intended no such result.

We think that the only thing that could have engaged the attention of Congress in enacting the legislation here in question was the net amount which the second decedent had received from the first decedent, which net amount, or its proceeds, remained in the estate of the second decedent when he died within five years after the death of the first decedent. The question whether the second decedent paid the tax out of his own funds, or out of the proceeds of insurance not includible in the estate of the first decedent, or out of the assets of the estate, would depend, apart from its effect upon the tax question, upon collateral circumstances. If the heir of the first decedent happened to have, or to acquire out of the proceeds of insurance, enough money to pay the estate tax, he could, without one penny's effect upon his net worth, pay it. If it seemed important not to sell the investments which the first decedent had, the heir would pay the tax out of his own liquid funds if he had such funds. If not, he would, if he could, borrow money on his own credit, or the prospects of his inheritance, and hope to pay it back out of his income or that of the inherited investments. See Commissioner of Internal Revenue v. Garland, 1 Cir., 136 F.2d 82. Whether he should do one or the other of these things would be determined on the basis of prudent management of his property.

If, however, the large saving in taxes for which the plaintiff contends could be achieved by leaving the estate property intact, the heir, if of advanced age or unpromising health, would make every effort to keep the estate intact even if doing so would be of no use other than to save taxes.

We do not think that Congress had any intention of discriminating in favor of a well-financed heir, merely because he was so well-financed that he could not only pay out of his own funds the tax on the estate of the first decedent, but would not find it necessary, over a five-year period, to reimburse himself for the money so paid. If it did so intend, it must have been willing to permit a substantial loss of revenue, in cases such as the instant one, without any possible reason based upon either fairness, convenience of administration, or expediency, to justify the loss. We think it would be unfair to the legislature to attribute to it an intention which could only be described as erratic.

The plaintiff points to the reference in Section 812(c) to taxes "paid by or on behalf of such donor, or the estate of such prior decedent * * *." We think that this language is nothing more than a recognition by Congress that estate taxes may be paid by heirs out of their own funds rather than out of the assets of the estate, and an assurance that no prejudicial consequence, with regard to the application of the statute, shall result from their being so paid.

There is here no problem of double taxation except in a merely formal and unsubstantial sense. As much of net worth as accrued to Rose L. Sutherland and her estate from the estate of her husband, after deducting the taxes paid by her from her own funds in order to get title to the estate of her husband, has been allowed as a deduction from her gross estate, in computing its taxes. The allowance of the greater deduction claimed would be an attribution to Congress of an intention to discriminate irrationally between taxpayers. It would be an inexcusable sticking in the letter of a statutory text. In Central Hanover Bank & Trust Co. v. Commissioner, 2 Cir., 159 F.2d 167, 169, certiorari denied 331 U.S. 836, 67 S.Ct. 1518, 91 L.Ed. 1848, Judge Learned Hand, in his opinion denying the same contention made herein by the plaintiff, for a literal interpretation of Section 812(c), said:

"There is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure. Nor is a court ever less likely to do its duty than when, with an obsequious show

of submission, it disregards the overriding purpose because the particular occasion which has arisen, was not foreseen."

The decision just cited affirmed the decision of the Tax Court, which appears under the title of Estate of Wilkinson v. Commissioner, 5 T.C. 1246. The Court of Appeals for the Fifth Circuit decided the question the same way in Bahr v. Commissioner, 119 F.2d 371. In the later case of Thomas v. Earnest, 5 Cir., 161 F.2d 845, that Court reached the opposite conclusion. We prefer the reasoning in its earlier decision.

The plaintiff thinks that Crane v. Commissioner, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301, supports her contention. In that case the Court held that the word "property" as used in the tax statute there involved, meant the physical object, and not the taxpayer's equity of redemption in the object. The Court pointed out that Congress had, in the legislation there under consideration, used the words "property" and "equity" with obvious discrimination. Besides, there were cogent reasons why Congress would have intended the word "property" as there used to be taken literally. In the instant case we have no problem of a distinction between property and an equity in property. And if the argument based on the Crane case were accepted, there would be no possible reason for stopping where the plaintiff would have us stop, with the estate tax. The argument would apply equally to the case where the heir paid the debts of the prior estate out of his own funds, and kept the inherited "property" intact. All the authorities reject this conclusion.

The plaintiff's motion for a summary judgment is denied. The defendant's motion for a summary judgment is granted and the plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LITTLETON, Judge, dissents.